STATE OF CONNECTICUT *v.* KEITH
ERIC ANDERSEN
(AC 32076)

Gruendel, Alvord and Bishop, Js.

Argued September 15—officially released November 15, 2011

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Kathryn Ward Bare*, assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Theresa Ferryman* and *Sarah E. Steere*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Keith Eric Andersen, appeals from the judgment of conviction, rendered after a jury trial, of one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), one count of risk of injury to a child in violation of § 53-21 (a) (2), one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) and one count of burglary in the second degree in violation of General Statutes (Rev. to 2007) § 53a-102 (a) (1).[1]

[1] The incident leading to the charges against the defendant occurred on July 3, 2007. The legislature amended § 53a-102 during a special session in January, 2008; see Public Acts, Spec. Sess., January, 2008, No. 08-1, § 3; which became effective on March 1, 2008. The amendment deleted former subdivision (1) of subsection (a), which defined burglary in the second degree as entering or remaining unlawfully in a dwelling *at night* with the intent to commit a crime therein. That specific conduct was reclassified by the same public act; Spec. Sess. P.A. 08-1, § 2; as burglary in the first degree under General Statutes § 53a-101 (a) (3).

Burglary in the second degree is now defined as follows: "A person is guilty of burglary in the second degree when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein." General Statutes § 53a-102 (a).

On appeal, the defendant claims that the trial court improperly (1) allowed evidence of prior uncharged misconduct, (2) restricted his cross-examination of a state's witness and (3) denied his motions for a judgment of acquittal. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In July, 2007, C[2] was living with the victim, K, his nine year old daughter, in a mobile home in Stonington. The mobile home was owned by S, C's estranged wife and the victim's stepmother. S was living at that time with a friend in Waterford. During the evening of July 2, 2007, the defendant stopped by the mobile home to visit C. The defendant had been a friend of C and S for more than a year. K played outside while the defendant and C talked and drank beer.

Shortly after the defendant's arrival, N, the eighteen year old daughter of S, and her boyfriend also stopped by the mobile home to visit C. They had driven from New Fairfield and planned on staying in the area for the night. Because the mobile home was small and they wanted privacy, N and her boyfriend indicated that they would like to stay at a local hotel but that they were unable to rent a room because of their ages. The defendant offered them the use of his home, saying that he would not be staying there that evening. When they indicated that they would prefer a hotel room, the defendant offered to help them.

After they had visited for a few hours, C, who was employed by Foxwoods Casino, told the group that he needed to take a nap before he went to work his scheduled third shift. The defendant had his own car

---

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

and left at that time. N and her boyfriend drove away in their own vehicle and followed the defendant to a hotel in Mystic. The defendant went into the hotel lobby and secured a room in his name. He then exited the hotel, gave the room key to N and her boyfriend and departed.

C left for work at approximately 11:15 p.m. Before he left, he checked on K, who was asleep, and locked both doors of the mobile home. K stayed in the mobile home alone while C was at work. She slept in a bunk bed in her own bedroom. That night she was wearing sport shorts with an elastic waistband and a T-shirt. At approximately 1 a.m., K was awakened by the defendant, who put his hand under her shorts and touched her buttocks. He snapped the elastic at her waist several times "trying to look into [her] underwear." She kept turning and moving in the bed to avoid him and then confronted him by asking why he was there. The defendant said that C had requested that he stop by to check on her. K did not believe him[3] and told the defendant to leave, at which point he exited the mobile home. K telephoned C at work to tell him what had happened, and C returned home. When he arrived at the mobile home, he noticed that the back door was ajar and that the screen had been ripped.

C contacted the Stonington police department to report the incident. After an investigation, the defendant was arrested and pleaded not guilty to the charged offenses. Following a three day trial, the court rendered a judgment of conviction in accordance with the jury's verdict of guilty on all counts of the amended substitute information. The defendant was sentenced to a total effective term of thirty years incarceration, execution suspended after fifteen years, followed by thirty-five

---

[3] During his testimony at trial, C confirmed that he had not asked the defendant to baby-sit K or to check on her that evening.

years of probation with special conditions. This appeal followed.

I

The defendant's first claim is that his federal and state constitutional rights were violated when the court admitted evidence of his prior uncharged misconduct.[4] More specifically, the defendant argues that the court improperly permitted the testimony of K, C and S with respect to a previous incident in which the defendant had touched K inappropriately. The defendant claims that the court did not determine whether the prior misconduct was remote in time or similar to the charged misconduct. He further claims that the court failed to conduct the requisite balancing test to determine whether the probative value outweighed the prejudicial effect of the evidence and that the court failed to give a proper cautionary instruction to the jury regarding the proper use of the uncharged misconduct evidence. We disagree.

The following additional facts and procedural history are relevant to the defendant's claim. The defendant filed a pretrial motion in limine to preclude the state from introducing evidence of his prior criminal convictions and allegations of prior misconduct with respect to K. The state filed a response to the defendant's motion, indicating that it would present evidence of the defendant's prior felony convictions only if he elected to testify at trial. With respect to the uncharged misconduct evidence involving K, the state objected to the defendant's motion and indicated that it intended to offer testimony regarding an incident it believed to be

---

[4] The defendant states that his claim encompasses both federal and state constitutional violations. Because he has not briefed a state claim separately, we consider only a claim of a federal constitutional violation. See *State* v. *Mulero*, 91 Conn. App. 509, 514 n.3, 881 A.2d 1039 (2005), cert. denied, 277 Conn. 912, 895 A.2d 792, cert. denied, 549 U.S. 862, 127 S. Ct. 149, 166 L. Ed. 2d 108 (2006).

relevant to his intent and motive in committing the charged offenses. The state included a summary of the anticipated testimony in its attached memorandum of law.

The court held a hearing on November 23, 2009, to consider the motion. According to the state, the incident of uncharged misconduct took place within eighteen months of the charged offenses and occurred when the defendant and K were in the backseat of a car being driven by C. S, who was not separated from C at that time, was in the front passenger seat. The state indicated that K would testify that the defendant kept trying to touch her buttocks, that she told him to stop and that she asked C and S to tell the defendant to stop trying to touch her buttocks.

Following argument by counsel, the court denied the defendant's motion to preclude the evidence. Citing Connecticut case law, the court stated that it was permissible to introduce evidence of a defendant's prior sexual misconduct with the same complaining witness to show motive and intent and that the probative value of such evidence outweighed its prejudicial effect. The court further stated that such evidence is commonly admitted to show a lustful inclination toward a specific victim and that a particular sexual interest in a victim is relevant to the motivation of the defendant to commit the charged offense. Additionally, the court noted that the alleged prior misconduct was sufficiently similar to the charged misconduct and had happened within months of the charged offenses. The court concluded: "With a limiting instruction, it is the feeling of the court [that] the evidence is highly probative and that the probative value of such evidence outweighs any claimed prejudicial effect on the defendant."

At trial, K testified that the defendant had touched her buttocks prior to the July 3, 2007 incident. She said

she was in the backseat of C's car when it happened, that she told C and S that the defendant was touching her buttocks and that they told him to stop. The court then gave the jury a limiting instruction with respect to the uncharged misconduct evidence.[5] C likewise testified as to the prior incident in his car. He recalled that the defendant and K were "poking" each other in the backseat, and K kept asking the defendant to stop. He told them both to stop, although he did not know exactly what was happening at the time. At the conclusion of C's testimony, the court gave the same limiting instruction to the jury with respect to the use of the prior uncharged misconduct evidence. The state called S as its next witness, and she additionally testified as to the prior incident in the car. She stated that the defendant and K were both in the backseat, that K kept telling the defendant to "stop it" and that K said the defendant would not stop touching her leg. S testified that she was not paying much attention to what was

---

[5] The court's limiting instruction was as follows: "The state has offered evidence of other acts of misconduct of the defendant. This is not being admitted to prove the bad character of the defendant or the defendant's tendency to commit criminal acts. Such evidence is being admitted solely to show or establish the defendant's intent or the motive for the commission of the crimes alleged; you may not consider such evidence.

"This is just the evidence to have occurred in the car. You may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or demonstrate a criminal propensity. You may consider such evidence if you believe it and further find that it logically, rationally and conclusively supports the issues for which it is being offered by the state, but only as it may bear on the issue of the defendant's intent or motive.

"On the other hand, if you do not believe such evidence or, even if you do, if you find it does not logically, rationally and conclusively support the issues for which it is being offered by the state, mainly the defendant's intent or motive, then you may not consider that testimony for any purpose.

"You may not consider evidence of other misconduct of the defendant for any purpose other than the ones that I just told you because it may predispose your mind uncritically to believe that the defendant may be guilty of the offense here charged merely because of the alleged other misconduct.

"For this reason, you may consider this evidence only on the issues of the defendant's intent or motive, and for no other purpose."

going on but that she did tell both of them to "cut it out . . . ." The court did not give a limiting instruction with respect to S's testimony. The court did, however, give a limiting instruction as to the prior uncharged misconduct in its final instructions to the jury.

"We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Orr*, 291 Conn. 642, 666–67, 969 A.2d 750 (2009).

"[A]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . Nor can such evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . [H]owever, evidence of prior misconduct may be admitted when it is offered for a purpose other than to establish the defendant's bad character or criminal propensity. Among other things, prior misconduct evidence may be admissible to prove intent, identity, motive, malice or a common plan or scheme." (Citations omitted; internal quotation marks omitted.) *State* v. *Jacobson*, 283 Conn. 618, 630, 930 A.2d 628 (2007).

"[P]ublic policy considerations militate in favor of recognizing a *limited* exception to the prohibition on the admission of uncharged misconduct evidence in *sex crime* cases to prove that the defendant had a propensity to engage in aberrant and compulsive criminal sexual behavior." (Emphasis in original.) *State* v. *DeJesus*, 288 Conn. 418, 470, 953 A.2d 45 (2008). That approach, however, "does not vest trial courts with carte blanche

to allow the state to introduce any prior sexual misconduct evidence against an accused in sex crime cases. . . . First, evidence of uncharged sexual misconduct is admissible only if it is relevant to prove that the defendant had a propensity or a tendency to engage in the type of aberrant and compulsive criminal sexual behavior with which he or she is charged. . . . [E]vidence of uncharged misconduct is relevant to prove that the defendant had a propensity or a tendency to engage in the crime charged only if it is: (1) . . . not too remote in time; (2) . . . similar to the offense charged; and (3) . . . committed upon persons similar to the prosecuting witness. . . .

"Second, evidence of uncharged misconduct is admissible only if its probative value outweighs the prejudicial effect that invariably flows from its admission. . . . In balancing the probative value of such evidence against its prejudicial effect, however, trial courts must be mindful of the purpose for which the evidence is to be admitted, namely, to permit the jury to consider a defendant's prior bad acts in the area of sexual abuse or child molestation for the purpose of showing propensity. . . .

"Lastly, to minimize the risk of undue prejudice to the defendant, the admission of evidence of uncharged sexual misconduct under the limited propensity exception adopted herein must be accompanied by an appropriate cautionary instruction to the jury." (Citations omitted; internal quotation marks omitted.) Id., 472–74.

With these principles in mind, we review the court's ruling allowing the introduction of the prior misconduct evidence. The court determined that the proposed evidence[6] was relevant and probative because the defendant's conduct in the car, i.e., repeatedly trying to touch

---

[6] The state's representations as to the proposed evidence were borne out at trial by the testimony of K, C and S.

K's buttocks, was sufficiently similar to the charged offenses, i.e., putting his hand under her shorts, touching her buttocks and trying to look in her underwear. Additionally, the court determined that the claimed prior misconduct was proximate in time to the incident leading to the charged offenses. Because the prior misconduct involved the same victim, there was no issue as to whether it was committed upon a person similar to the prosecuting witness. See id., 473.

The court's conclusion that the probative value of the prior misconduct evidence[7] outweighed its prejudicial value is supported by the record.[8] As the court indicated, evidence of prior sexual misconduct with the same victim is commonly admitted to show "a lustful inclination toward the victim." *State* v. *James*, 211 Conn. 555, 578, 560 A.2d 426 (1989). It is apparent from the court's ruling that it considered all of the relevant factors set forth in *DeJesus* and performed the requisite balancing test. The court also gave the jury the mandatory cautionary instruction as to the limited use of the prior sexual misconduct evidence, in order "to minimize the risk of undue prejudice to the defendant . . . ." *State* v. *DeJesus*, supra, 288 Conn. 474.[9] Accordingly, we cannot

---

[7] "[B]ecause of the unusually aberrant and pathological nature of the crime of child molestation, prior acts of similar misconduct, as opposed to other types of misconduct, are deemed to be highly probative because they tend to establish a necessary motive or explanation for an otherwise inexplicably horrible crime . . . ." *State* v. *DeJesus*, supra, 288 Conn. 469.

[8] In order to conclude that the trial court performed the necessary balancing test, "a reviewing court must be able to infer from the entire record that the trial court considered the prejudicial effect of the evidence against its probative nature before making a ruling." *State* v. *Nunes*, 260 Conn. 649, 690, 800 A.2d 1160 (2002).

[9] The defendant claims that the court gave the limiting instruction only once, after K's testimony. The record reflects, however, that the court gave a limiting instruction after C's testimony and in its final instructions to the jury.

The defendant also claims that the court should have given the cautionary instruction prior to the testimony of the witnesses rather than after that testimony. See *State* v. *DeJesus*, supra, 288 Conn. 477. The defendant, however, never challenged the timing of the cautionary instruction at trial, nor

conclude that the court abused its broad discretion in admitting the testimony of K, C and S with respect to the prior uncharged sexual misconduct of the defendant.[10]

## II

The defendant's next claim is that the court impermissibly restricted his cross-examination of a state's witness, thereby precluding the elicitation of relevant and material evidence on the issue of the defendant's intoxication. The defendant argues that he was so intoxicated on the night of the incident that he could not have formed the specific intent necessary for the commission of the crimes of sexual assault in the fourth degree and burglary in the second degree. He claims that the court would not permit him to question the witness with respect to the issue of blood alcohol levels and their effects on the human body, which effectively deprived

has he indicated how he was harmed by the instruction being given after, rather than before, the witnesses' testimony.

[10] Even though *State* v. *DeJesus*, supra, 288 Conn. 418, was decided before the trial in this case, it appears that the trial court relied on language from earlier case law in determining whether the prior uncharged sexual misconduct evidence was admissible. Although *DeJesus* made it clear that such evidence, under appropriate circumstances, may be admitted to establish that the defendant had a tendency or propensity to engage in "aberrant and compulsive criminal sexual behavior;" id., 476; the court in this case specifically limited the use of the evidence to establish the defendant's motive or intent for the commission of the charged offenses. In fact, the court specifically charged the jury that it could not use the evidence to establish the defendant's propensity to engage in sexual misconduct.

The defendant claims that the court's failure "to utilize the proper standard of review" deprived him of a fair trial. The defendant fails to indicate, however, how the court's instruction that such evidence could be used only to establish motive and intent rather than for the broader purpose of establishing a propensity to engage in aberrant and compulsive sexual behavior has harmed him in any way. The defendant simply states that the "court . . . confused the jury." The defendant did not demonstrate, and we cannot conclude, that the court's failure to allow the use of the prior uncharged sexual misconduct evidence to demonstrate his propensity to commit the charged offenses confused the jury or was harmful to the defendant.

him of his constitutional right to present a defense.[11] We are not persuaded.

The state called Detective Joseph Coco of the Stonington police department to testify at trial concerning his questioning of the defendant on July 6, 2007, which was three days after the incident with K. Coco stated that he spoke with the defendant at his home in Noank after having spoken with K and C. He testified that the defendant was aware of the reason for the investigation but that "his memory was not very clear as to what happened." According to Coco, the defendant said that he had driven to Massachusetts during the night and slept at a construction site where he previously had worked. When the defendant woke up in the morning, he drove back home. The defendant told Coco that he knew he had visited C earlier in the evening and that afterward he had been at the Polish American Club in New London, where he consumed additional alcoholic drinks, but that he could remember nothing from the time that he had left the club until he had awakened at the construction site in Massachusetts the next morning.

During cross-examination, defense counsel asked Coco whether he and the defendant specifically discussed the quantity of alcohol that the defendant had consumed during the night in question. Coco responded in the negative. Coco was then asked whether he had any training with respect to the effects of alcohol on a person, and he said that he did. Defense counsel questioned Coco as to the blood alcohol level necessary for a person to experience a blackout, and Coco testified that it would be "higher than lower . . . ." After the next question, which pertained to the statute that

---

[11] Although the defendant claims a violation of his federal and state constitutional rights, we consider only a claim of a federal constitutional violation. See footnote 4 of this opinion.

prohibits driving while intoxicated, the state objected on the ground of relevance. The jury was excused, and defense counsel stated: "Your Honor, one of the defenses we have is intoxication. This witness has experience, an understanding as to the influence alcohol has on the body, and it certainly would be relevant to our defense."

The prosecutor responded that Coco had not observed the defendant during the night of the incident, did not know the defendant's capacity to consume and to digest alcohol and was not qualified to give an opinion. The court then permitted defense counsel to voir dire Coco outside of the presence of the jury in an attempt to lay a foundation for that line of questioning. Coco testified that he did not have an understanding as to the range of blood alcohol levels that would produce a blackout. He stated that he did know that a blood alcohol level of 0.5 could be indicative of a medical emergency, that a level of 0.4 most likely would mean that a person would be unconscious and that a level of 0.3 would have a pronounced negative effect on a person's ability to function physically.

The prosecutor then argued that the defendant's blood alcohol level could not be established because no blood alcohol evidence had been submitted in the case. The court asked defense counsel whether he had any evidence as to the effect a certain blood alcohol level would have on the person of the defendant as opposed to an average person; defense counsel responded that he did not. Defense counsel further stated that he had not retained a toxicologist and that he had no evidence as to the defendant's blood alcohol level on the night of the incident.

The court ruled that the proposed questions would confuse the jury. In precluding further cross-examination on the issue, the court stated: "I think any probative

value is outweighed by the danger of confusion of the issues, and misleading the jury, and undue delay—[a] waste of time, needless presentation of evidence, and this witness doesn't have the requisite foundation to offer any such opinion." At that point, the jury returned to the courtroom, and defense counsel indicated that he had no further questions for Coco.

"It is well established that [t]he federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . When defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded." (Internal quotation marks omitted.) *State* v. *Hedge*, 297 Conn. 621, 634, 1 A.3d 1051 (2010).

In the present case, the defendant was attempting to elicit testimony from the state's witness to prove his claim that he was too intoxicated to have been able to form the specific intent necessary for the commission of the crimes of sexual assault in the fourth degree and burglary in the second degree. The court permitted some questioning as to Coco's background and training relative to the effects of alcohol consumption on the

human body. After the state's objection on the ground of relevancy, the court permitted the defendant to question Coco outside of the jury's presence to lay a foundation as to his qualifications to opine as to the defendant's level of intoxication. The record supports the court's determination that the proffered line of questioning would not have elicited relevant evidence because defense counsel confirmed that he had no evidence to present with respect to the defendant's blood alcohol level on the night of the incident and no evidence to present with respect to the quantity of alcohol that would cause the defendant to experience a blackout. The defendant did not have a toxicologist or other expert to opine as to the defendant's state of intoxication, and Coco did not possess the requisite expertise because he testified that he did not know at what blood alcohol level a blackout would occur.

Accordingly, we conclude that the trial court properly precluded further cross-examination of Coco with respect to the issue of blood alcohol levels and blackouts. The defendant's constitutional claim has no merit, and the court did not abuse its discretion in limiting the cross-examination of Coco on that matter.

### III

The defendant's final claim is that the court improperly denied his motions for acquittal. At the conclusion of the state's case-in-chief and after all the evidence had been presented by the parties, the defendant moved for a judgment of acquittal. He claimed that (1) there was insufficient evidence to prove that he touched K's buttocks, thereby precluding a conviction of risk of injury to a child in violation of § 53-21 (a) (2) and sexual assault in the fourth degree and (2) the state failed to prove that he had the requisite mental state to commit the crimes of sexual assault in the fourth degree and

burglary in the second degree because of his high level of intoxication at the time of the incident.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 808, 911 A.2d 1099 (2007).

## A

The defendant claims that the " 'cumulative force of the evidence' " did not establish beyond a reasonable doubt that the defendant touched the intimate parts or had sexual contact with K, which is a key element in the crimes of risk of injury to a child in violation of § 53-21 (a) (2)[12] and sexual assault in the fourth degree

[12] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years . . . in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony for a violation of subdivision (2) of this subsection, except that, if the violation is of subdivision (2) of this subsection

in violation of § 53a-73a (a) (1) (A).[13] He argues that multiple witnesses, including K, testified that the defendant *attempted* to touch her or was *trying* to touch her, not that she had actually been touched. The defendant claims that the state failed to prove a touching or sexual contact with K's intimate parts beyond a reasonable doubt because "[h]ere the evidence was overwhelming in showing an 'attempted touching,' but minimal in showing an actual touching."

At trial, K testified during direct examination that she was awakened in the middle of the night by the defendant, whose hand was under her shorts. She testified that she could feel his hand on her skin. During cross-examination, defense counsel asked K the following question: "I guess my question to you is, as you're sitting here today more than two years after the date, are you sure that [the defendant] touched your butt over your shorts?" K responded: "Yes." Defense counsel next asked if she recalled telling a police officer and telling C that the defendant had touched her buttocks over her shorts, and she again responded in the affirmative. Further, Coco testified that K told him during his investigation that the defendant had touched her buttocks. He included that information in K's written statement and reviewed the statement with her before she signed it.

and the victim of the offense is under thirteen years of age, such person shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

General Statutes § 53a-65 (8) defines "[i]ntimate parts" as "the genital area . . . groin, anus . . . inner thighs, buttocks or breasts."

[13] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under thirteen years of age and the actor is more than two years older than such other person . . . ."

General Statutes § 53a-65 (3) defines "[s]exual contact" in relevant part as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person . . . ."

"[I]t is well settled that [w]hether [a witness'] testimony [is] believable [is] a question solely for the jury. It is . . . the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . [T]he [jury] can . . . decide what—all, none or some—of a witness' testimony to accept or reject. . . . [Q]uestions of whether to believe or to disbelieve a competent witness are beyond our review . . . . In addition, [e]vidence is not insufficient merely because it is conflicting or inconsistent. . . . A trier of fact is free to reject testimony even if it is uncontradicted . . . and is equally free to reject part of the testimony of a witness even if other parts have been found credible. . . . [A]n appellate court does not retry the case or evaluate the credibility of the witnesses." (Citations omitted; internal quotation marks omitted.) *State* v. *Betancourt*, 106 Conn. App. 627, 632 n.1, 942 A.2d 557, cert. denied, 287 Conn. 910, 950 A.2d 1285 (2008). Because the jury was free to credit all or part of K's testimony, and we do not second-guess the jury's credibility determinations, the defendant's claim fails.

B

The defendant also claims that the state failed to prove that he had the requisite specific intent to commit the crimes of sexual assault in the fourth degree and burglary in the second degree because of his intoxicated condition at the time of the incident. He argues that the court should have granted his motion for acquittal because he had introduced evidence that he was intoxicated, the state did not refute the fact of his intoxication, and, therefore, the state failed to prove that he possessed the specific intent to commit those crimes.

The specific intent to subject a person under thirteen years of age to sexual contact, when the actor is more than two years older than the victim, is an essential

element of the crime of sexual assault in the fourth degree. General Statutes § 53a-73a (a) (1) (A). The specific intent to commit a crime when a person enters a dwelling unlawfully, when another individual is present in that dwelling, is an essential element of the crime of burglary in the second degree. General Statutes § 53a-102 (a). The defendant's theory of defense was that he was too intoxicated to be able to form the specific intent to commit those crimes. General Statutes § 53a-7 provides in relevant part: "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged . . . . As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

The defendant claims that the following evidence submitted at trial indicated that he was intoxicated at the time of the incident. K testified that C and the defendant had been drinking that night and that she smelled beer when the defendant later appeared at the mobile home. N testified that she thought the defendant "was drunk" while he was at the mobile home because she could smell alcohol. S testified that she was working as a bartender at the Polish American Club on the night in question and that the defendant walked in at approximately 11:30 p.m. According to S, he appeared to be intoxicated when he arrived, and he was served three or four alcoholic drinks at the club before he left the premises sometime between 12:45 a.m. and 1:15 a.m. Detective John Fiore of the Stonington police department testified that he interviewed C a few days after the incident, and C told him that he and the defendant had consumed several beers between the hours of 7 p.m. and 8 p.m. Coco testified that he questioned the defendant during the investigation, and the defendant

claimed that he had suffered a blackout from the time he left the Polish American Club until he woke up in Massachusetts.

It was the state's burden to prove, beyond a reasonable doubt, that the defendant had the requisite specific intent to commit the charged offenses of sexual assault in the fourth degree and burglary in the second degree despite evidence of his intoxication at the time of the incident. See *State* v. *Faria*, 254 Conn. 613, 636–37, 758 A.2d 348 (2000). Although a criminal defendant's intoxication is relevant to the issue of whether the defendant had the capacity to form the specific intent necessary for the commission of the crime, "it is not dispositive of the issue. It is for the jury to decide, after weighing all the evidence adduced at trial, whether a criminal defendant's intoxication rendered him incapable of forming the intent required to commit the crime with which he is charged." *State* v. *Vinal*, 198 Conn. 644, 658–59, 504 A.2d 1364 (1986).

In the present case, the defendant's argument relies on the assumption that the jury fully accepted all of the evidence that supported the defendant's claim of debilitating intoxication. The jury, however, was free to accept or reject any of that testimony, including the defendant's assertion that he had no recollection of events after he left the Polish American Club. Other testimony, which the jury reasonably could have believed, demonstrated that the defendant did possess the requisite specific intent and that he had planned to molest K. The incident that occurred in the backseat of C's car months before the defendant committed the charged offenses evidenced the defendant's motive and intent to sexually assault K. Further, he knew C was working the third shift at Foxwoods and would not be at the mobile home later that evening. He also made certain that N and her boyfriend would not stay overnight at the mobile home by renting a hotel room for

them in Mystic. The defendant even checked on the whereabouts of S, just in case she might have planned on stopping by to see K. Although he never had visited S at the Polish American Club before the night of the incident, he stopped in that evening to determine whether S was working. Additionally, the defendant was mentally and physically capable of breaking through the screen and opening the locked door in order to reach K. When K demanded to know why he was there, he had the presence of mind to say that C had asked him to check on her. Finally, the defendant was able to drive the distance to Massachusetts after leaving the Polish American Club and the mobile home that evening.

In weighing all of the evidence, the jury reasonably could have concluded that the state proved beyond a reasonable doubt that the defendant possessed the specific intent to commit the crimes of sexual assault in the fourth degree and burglary in the second degree. Viewing the evidence in the light most favorable to sustaining the jury's verdict, we find no basis for disturbing its conclusion. Accordingly, the trial court properly denied the defendant's motions for a judgment of acquittal.

The judgment is affirmed.

In this opinion the other judges concurred.