******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERTO Q.*
(AC 37635)

DiPentima, C. J., and Alvord and Gruendel, Js.

*Argued October 13, 2016—officially released February 14, 2017*

(Appeal from Superior Court, judicial district of
Waterbury, Cremins, J.)

*Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Amy L. Sedensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. Following a jury trial, the defendant, Roberto Q., was found guilty of one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (2), one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (B), and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The defendant's niece, S.A. (victim), was between the ages of twelve and fourteen years old at the time of the assaults.[1] The court rendered judgment in accordance with the jury verdict and sentenced the defendant to a total effective sentence of twenty years incarceration, suspended after ten years, followed by fifteen years of probation.

On appeal, the defendant claims that the court improperly instructed the jury on the use of constancy of accusation evidence, and that the court erred by denying his motion for a mistrial after the state inadvertently elicited testimony concerning uncharged prior misconduct by the defendant. The state responds that the court properly instructed the jury on the use of constancy evidence, and that the court issued a curative instruction regarding the uncharged prior misconduct testimony, thereby avoiding the need for a mistrial. We conclude that the court's jury instruction was proper, and that the court did not err in denying the defendant's motion for mistrial. Accordingly, we affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The victim was born in November, 1996, in Puerto Rico. She, her mother, sister, and brother moved to Waterbury in 2007. The defendant, who also had lived in Puerto Rico, moved to Waterbury as well. The period of charged misconduct was from June, 2009 to June, 2011. The victim and her family lived in New York City from 2009 until at least April, 2011, before returning to Waterbury. In April, 2011, the victim wrote a journal entry in which she referenced the defendant.[2] Her mother discovered the journal entry in June, 2011, after the family had moved back to Waterbury. About a week later, the victim told her mother that the defendant had touched her body, specifically her vagina, in a sexual manner. She also stated that the defendant had touched her sister, C.A., sexually as well.

About a month after the victim's mother read the diary entry, the family held a meeting at the home of the defendant's mother to discuss the victim's allegations. The victim, C.A., their parents, their brother, the defendant, his parents, and his brother attended the meeting. C.A. and her mother testified at trial that when the victim announced that the defendant had been touching her, he became upset and threw a bottle of

iced tea against the wall. After the meeting, the victim's mother took the victim and C.A. to the police department to file a report against the defendant.

The state filed two informations against the defendant, one alleging offenses related to the victim, and one alleging offenses related to C.A. The court consolidated the cases for trial.[3] At the trial, the victim testified that she often visited the defendant at the Waterbury home he shared with his three children and their mother. The victim also testified that from 2009 to April, 2011, when she was living in New York, she and her sister would sometimes stay overnight at the defendant's house on weekends. After the victim and her family moved back to Waterbury, she was at the defendant's house almost every day until June, 2011, when her mother discovered her journal entry pertaining to the defendant.

The victim testified that during these visits the defendant touched her sexually many times in his kitchen and living room. In the kitchen, the defendant would lean against the table, hold her with her back to his chest, and touch her vagina over her clothes and then inside her vagina with his fingers. Afterward, the defendant would ask the victim to forgive him and promise never to do it again. On one occasion, the defendant's neighbor, Joshua Roman, walked into the kitchen while the defendant was touching her. The victim testified that the defendant was touching her breasts when Roman interrupted, but Roman testified that he only witnessed the defendant caressing her back. In the living room, the defendant would have the victim sit in his lap on the couch covered by a sheet while he put his fingers in her vagina. Additionally, the victim testified that, on another occasion, the defendant kissed her and put his fingers inside her vagina while they were in the back seat of his car and his children were in the front seat.

C.A. also testified regarding the defendant's conduct. Among other incidents, she testified that the defendant began touching her in a sexual manner when she was six years old and living in Puerto Rico. After C.A. testified as to this alleged misconduct, the court excused the jury and noted that the misconduct at issue was not included in the state's disclosure of uncharged misconduct. When the jury returned, the court instructed the jury to disregard any evidence concerning any alleged incidents involving the defendant and C.A. that took place in Puerto Rico.

Prior to the conclusion of the state's evidence, the defendant filed a motion for mistrial. In his motion, the defendant claimed that "the introduction of testimony by the state, through C.A., alleging incidents of sexual contact by the defendant in Puerto Rico resulted in a violation of the defendant's right to due process under the state and federal constitutions, his right to a fair

trial, and his right to effective assistance of counsel." Specifically, the defendant asserted that the state failed to give notice of certain allegations of sexual contact between the defendant and C.A. prior to 2009 and, therefore, improperly elicited testimony concerning these allegations. The court denied the motion, concluding that the improper solicitation of testimony on this subject did not rise to the level of denying the defendant a fair trial, specifically noting that the court had sua sponte issued a curative instruction to the jury before any objection by the defendant had been made.

In addition to the testimony from the victim and C.A., the jury heard testimony from two constancy of accusation witnesses. The first was Roman, who testified about the incident in the defendant's kitchen where he saw the defendant caressing the victim's back. Roman walked into the living room, where the victim joined him a few minutes later. At that point, he testified that the victim said to him, " 'I told you that he touched me and all that.' " After Roman's testimony, the court instructed the jury on constancy of accusation testimony.[4]

The second constancy witness was the victim's mother, who testified that, about a week after she found the victim's diary, the victim told her that the defendant had "touched her in a sexual way." Although C.A. was not a part of that particular conversation, she also told her mother later that same day that the defendant had touched her sexually while they were at his apartment. After the mother's testimony concluded, the court again instructed the jury on constancy of accusation witness testimony.[5]

The defendant submitted a request to charge asking the court to instruct the jury that (1) constancy evidence was not to be used as substantive evidence to prove the truth of the complainants' out-of-court statements, and (2) constancy evidence could be used only to determine whether such statements were made. The defendant objected to any language that would have allowed the jury to use constancy of accusation testimony to "bolster" the complainants' credibility or "corroborate" their testimony. The defendant raised this objection before trial in a motion in limine, which was denied, and again orally after the court's limiting instruction with respect to Roman's testimony.

After considering the parties' requests to charge, the court gave the following instruction with respect to constancy of accusation evidence: "The complainants testified here in court before you. You may use their testimony as evidence and proof of the facts asserted in that testimony and give it the weight you find is reasonable.

"The state offered evidence of out-of-court statements made by the complainants to other persons that

the defendant sexually assaulted them. Those persons to whom the state alleges that they made such statements are: as to [the victim], [her mother] and Joshua Roman; by [C.A.] to [her mother] and Joshua Roman.

"Under our law, the testimony of these witnesses was limited in its scope to the fact and timing of the complainants' complaints, the time and place of the alleged sexual assaults, and the identity of the alleged perpetrator. Each of these people testified as to the statements the complainants made to each of them regarding the defendant's—the defendant sexually assaulting them.

"This evidence is to be considered by you only in determining the weight and credibility you will give the complainants' testimony as it pertains to the charges of sexual assault. This evidence of out-of-court statements by the complainants of a sexual assault against them by the defendant is not to be considered by you to prove the truth of the matter asserted in those out-of-court statements.

"In determining whether or not these out-of-court statements corroborate the complainants' testimony in court, you should consider all of the circumstances under which they were made and to whom, and whether the statements made to these persons were or were not consistent with the complainants' testimony in court.

"If you find any delay in their reporting the alleged incidents, you may consider such delay and any reason which you may find for such delay in evaluating their testimony given in court.

"To the extent that you find what they . . . have said outside the courtroom is consistent with their testimony in court, you may find their testimony in court to be corroborated or supported with respect to the fact and timing of their complaint, the time and place of the alleged sexual assault, and the identity of the alleged perpetrator.

"To the extent that you find that what they have said outside the courtroom is inconsistent with their testimony in court, you may consider the degree of inconsistency which you find, and you may consider the reasons which you may find for the inconsistency, in evaluating their testimony given in court." The defendant objected to the charge to the extent that it differed from his written request and oral requests. This appeal followed.

On appeal, the defendant asserts two separate claims. First, he argues that the court erred by instructing the jury that the complainants' allegations were corroborated by the testimony of the two constancy of accusation witnesses, and that this error requires reversal. Second, the defendant argues that the court erred by denying his motion for mistrial after the state elicited testimony from C.A. regarding uncharged prior sexual

misconduct by the defendant that had not been disclosed prior to trial. We consider each claim in turn.

I

The defendant first claims that the court improperly instructed the jury regarding the correct use of constancy of accusation evidence, which is admitted under *State* v. *Troupe*, 237 Conn. 284, 304, 677 A.2d 917 (1996), only to prove that a complaint was made, not to prove that the complaint was true. The defendant specifically claims that the jury instructions were improper in light of the preexisting susceptibility of jurors to disregard the subtle distinction between constancy evidence and substantive proof, and the court's use of the word "corroborate." The state responds that it is not reasonably probable that the court's instructions misled the jury. We agree with the state that the court's instructions correctly stated the law and did not mislead the jury.

"Our review of [a jury instruction] claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably [probable] that the jury could have been misled . . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible . . . when it is shown that it is *reasonably possible* for [improprieties] of constitutional dimension or *reasonably probable* for nonconstitutional [improprieties] that the jury [was] misled." (Emphasis added; internal quotation marks omitted.) *State* v. *Daniel W. E.*, 322 Conn. 593, 610, 142 A.3d 265 (2016). Jury instructions regarding constancy of accusation testimony are nonconstitutional in nature. See, e.g., *State* v. *Rivera*, 145 Conn. App. 344, 351–53, 76 A.3d 197 (allegedly improper instruction as to constancy of accusation testimony was not matter of constitutional magnitude), cert. denied, 310 Conn. 962, 83 A.3d 344 (2013); *State* v. *Wild*, 43 Conn. App. 458, 467, 684 A.2d 720 (failure to give instruction as to constancy of accusation testimony not matter of constitutional magnitude), cert. denied, 239 Conn. 954, 688 A.2d 326 (1996). "A challenge to the validity of jury instructions presents a question of law over which [we exercise] plenary review." (Internal quotation marks omitted.) *State* v. *Bonilla*, 317 Conn. 758, 770, 120 A.3d 481 (2015).

With respect to the governing legal principles, our Supreme Court concluded in *Troupe* that "a person to whom a sexual assault victim has reported the assault

may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." (Footnote omitted.) *State* v. *Troupe*, supra, 237 Conn. 304–305.

Recently, in *State* v. *Daniel W. E.*, supra, 322 Conn. 593, our Supreme Court considered an argument nearly identical to that of the defendant in the present case. As such, *Daniel W. E.* is controlling authority for the present case. In *Daniel W. E.*, the defendant was found guilty following a jury trial of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of § 53-21 (a) (2). Id., 595–96. The defendant claimed that the trial court improperly instructed the jury on the use of constancy of accusation evidence because the instruction "was reasonably understood by the jury to mean that the constancy evidence in fact corroborated the [victim's] testimony, and the jury could not reasonably distinguish between the corroboration language in the charge to the jury and the instruction that the constancy evidence could not be used as substantive evidence that the defendant [sexually assaulted] the [victim]." (Internal quotation marks omitted.) Id., 607. The portion of the jury instructions at issue in that case contained the same operative language as the jury instruction in the present case.[6]

Our Supreme Court disagreed with the defendant's argument, and held that the instructions did not mislead the jury. "It is clear from these instructions that the jury was permitted to use the constancy testimony *only* to corroborate the fact and timing of the victim's out-of-court statements to the two constancy witnesses, as well as any other information necessary to associate the victim's out-of-court statements with the pending charge. The instructions also made clear that, although the jury was permitted to consider the constancy evidence in evaluating the weight and credibility of the victim's testimony, including the reasons for her delay in reporting the abuse to the police, the evidence could not be used as proof of the substance or truthfulness of the statements themselves." (Emphasis in original.) Id., 612–13. The court rejected the contention that the

jury instructions failed to distinguish between constancy evidence and substantive proof, stating that "the trial court expressly cautioned the jury to use the constancy testimony 'for the limited purpose of corroborating what the [victim] . . . has testified to in court with respect only to the fact and timing of her complaint, the time and place of the alleged sexual assaults, and the identity of the alleged perpetrator,' " and ultimately holding that "this instruction was sufficient to distinguish between constancy evidence and substantive proof." Id., 613–14.

In the present case, we conclude that it is not reasonably probable that the court's limiting instructions on constancy evidence misled the jury. This case is virtually indistinguishable from *Daniel W. E.* on this issue, and we decline to diverge from the court's holding in that case. Accordingly, we conclude that the trial court correctly instructed the jury regarding the limited purpose for which the constancy evidence could be considered.

## II

The defendant also argues that the court erred in denying his motion for mistrial after the state inadvertently elicited testimony by C.A. of prior uncharged misconduct that allegedly occurred in Puerto Rico. Specifically, the defendant asserts that, notwithstanding the court's curative instruction, the testimony was so prejudicial that the jury could not reasonably be presumed to have disregarded it. We disagree.

We first set forth our standard of review and the relevant law. "In our review of the denial of a motion for mistrial, we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Anderson*, 255 Conn. 425, 435, 773 A.2d 287 (2001). "If a curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) *State* v. *Luther*, 114 Conn. App. 799, 805, 971 A.2d 781, cert. denied, 293 Conn. 907, 978 A.2d 1112 (2009). "[A]s a general matter, the jury is presumed to follow the court's curative instructions in the absence of some indication to the contrary." *State* v. *Grenier*, 257 Conn. 797, 810, 778 A.2d 159 (2001). Where an "evidentiary impropriety is not constitutional in nature, the defendant bears the burden of demonstrating harm." Id., 806–807. "[T]he burden is on the defendant to establish that, in the context of the proceedings as a whole, the stricken testimony was so prejudicial, notwithstanding the court's curative instructions, that the jury reasonably cannot be presumed to have disregarded it." *State* v. *McIntyre*, 250 Conn. 526, 534, 737 A.2d 392 (1999).

In the present case, the court properly weighed all of the factors before concluding, within its broad discretion, that the extreme remedy of a mistrial was unwarranted. In particular, the court noted that the defendant did not object to the improper testimony at the time, and that the court, sua sponte, halted the proceedings and issued a curative instruction to the jury immediately following the testimony. We conclude that the curative instructions were sufficient to overcome any prejudice to the defendant resulting from the proffered testimony, and the court, therefore, did not abuse its discretion in denying the defendant's motion for mistrial.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to use the victim's name or to identify members of the victim's family through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] In response to a special interrogatory, the jury found that the victim was under sixteen years of age at all relevant times with respect to the four counts of which they found the defendant guilty.

[2] The journal entry stated "[a]nd if [my father] didn't believe me with [his cousin] not much chance he's going to believe the thing with Roberto them being brothers . . . ."

[3] The jury returned verdicts of not guilty for all counts related to C.A.

[4] The instructions were as follows: "The state offered evidence of out-of-court statements made by the complainant, C.A., to Joshua Roman that the defendant sexually assaulted her. Under our law, the testimony of this witness is limited in its scope to the fact and time that the complainants complained. Again, this is related only to that portion of his testimony where he indicated that comments were made to him by C.A., limited to the time and place of the alleged sexual assault and the identity of the alleged perpetrator. This particular portion of the testimony, Mr. Roman's testimony, is to be considered by you only in determining the weight and credibility you will give the complainant's testimony as it pertains to the charges of sexual assault.

"This evidence of out-of-court statements made by the complainant, C.A., of a sexual assault against her by the defendant is not to be considered by you to prove the truth of the matter asserted in those out-of-court statements. The complainant C.A. testified here in court before you. You may use her testimony as evidence and proof of the facts asserted in that testimony and give it the weight you find is reasonable.

"In determining whether or not these out-of-court statements made by C.A. to Mr. Roman corroborate the complainant's testimony here in court, you should consider all of the circumstances under which they were made and to whom and whether the statements made to these persons, in this particular case Mr. Roman, were or were not consistent with the complainant's testimony given here in court. So, we're talking about that limited portion of the testimony related to comments that were allegedly made to Mr. Roman by C.A. The rest of the testimony is to be considered by you in the normal course." In its final instructions to the jury, the court clarified that Roman's testimony as to the victim's statements also was being offered for constancy of accusation purposes.

[5] The court instructed the jury that "[u]nder our law, the testimony of this witness for purposes of the comments made to her by C.A. and [the victim] with respect to the allegations here, is limited in scope. The fact of the timing of the complainants' complaints, the time and place of the alleged assaults, and the identity of the alleged perpetrator.

"Each of these individuals, C.A. and [the victim], [their mother] testified as to statements that were made, again, to her by C.A. and [the victim].

"With respect to this portion of the testimony, it is to be considered by you, only in determining the weight and . . . credibility you will give to the complainants' testimony as it pertains to the charges of sexual assault.

"This evidence of out-of-court statements by the complainants, C.A. and [the victim], of the assaults against them by the defendant is not to be

considered by you to prove the truth of the matter asserted in those out-of-court statements.

"In determining whether or not these out-of-court statements corroborate the complainants' testimony in court, you should consider all of the circumstances under which they were made, to whom, and whether the statements made to these individuals, to this individual in particular, were or were not consistent with the complainants' testimony in court."

[6] The jury instruction in *Daniel W. E.* stated in relevant part: "Under our law, [constancy of accusation evidence] is an exception only permitted in cases alleging a sexual assault and only admitted for the limited purpose of corroborating what the complaining witness [the victim], has testified to in court with respect only to the fact and timing of her complaint, the time and place of the alleged sexual assaults, and the identity of the alleged perpetrator. . . .

"In determining whether or not these out-of-court statements corroborate [the victim's] testimony in court, you should consider all of the circumstances under which they were made and to whom, and . . . whether the statements made to those persons were or were not consistent with [the victim's] testimony here in court." (Internal quotation marks omitted.) *State* v. *Daniel W. E.*, supra, 322 Conn. 606–607.

———————————————————