******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* ROBERT LEE NICHOLS
## (AC 46102)

Elgo, Moll and Prescott, Js.

### *Syllabus*

Convicted, after a jury trial, of the crimes of sexual assault in the fourth degree and risk of injury to a child, the defendant appealed to this court, claiming, inter alia, that the evidence was insufficient to demonstrate that he intentionally touched the minor victim for the purpose of the defendant's sexual gratification. After the minor victim began exhibiting behavioral problems, his mother accepted an offer from the defendant and his wife to have the victim live with them for two weeks to help address those problems. During that time, the defendant entered the bathroom where the victim had showered and beat his buttocks, after which he led the victim to the defendant's bedroom and made him sleep in bed with the defendant and his wife. While in bed, the defendant unbuttoned the victim's pants, rubbed the victim's legs and the side of his buttocks, and repeatedly touched the victim's penis, events that reoccurred almost every night during the victim's stay at the defendant's home. At trial, the victim yelled an expletive during the defendant's testimony, after which the victim left the courtroom demonstrably upset. Defense counsel moved for a mistrial on the ground that the victim's outburst had irreparably harmed the defendant's right to a fair trial. The court denied the motion for a mistrial and gave the jury a curative instruction directing it to disregard the outburst. *Held*:

1. The defendant could not prevail on his claim that the trial court abused its discretion when it denied his motion for a mistrial; the victim's outburst during the defendant's testimony, although inappropriate, was brief and isolated, the court did not observe any improper interaction between the jury and the victim or his mother, and the defendant did not demonstrate any indication that the jury failed to abide by the court's curative instruction, which obviated any possible harm to the defendant.

2. The evidence was sufficient to support the defendant's conviction of sexual assault in the fourth degree: the victim testified that the defendant forced him into the defendant's bed and sexually assaulted him there nearly every night during his stay at the defendant's home, conduct that easily justified a reasonable inference that the defendant did not touch the victim's penis for some reason other than to obtain sexual gratification; moreover, when the victim informed the defendant that he intended to report his conduct, the defendant made statements that caused the victim to fear that the defendant would harm the victim's mother, and the defendant's rebuke of his wife when she expressed discomfort with his conduct, as well as the recurrent nature of that conduct, further

supported a reasonable inference that the defendant's intentional touching of the victim was for the defendant's sexual gratification.

Argued May 15—officially released June 18, 2024

*Procedural History*

Substitute information charging the defendant with two counts of the crime of sexual assault in the fourth degree and one count of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of Hartford, geographical area number twelve, and transferred to the Superior Court in the judicial district of Hartford, geographical area number fourteen; thereafter, the case was tried to the jury before *Gustafson, J.*; subsequently, the court denied the defendant's motions for a judgment of acquittal and for a mistrial; verdict of guilty; thereafter, the court denied the defendant's motion for a judgment of acquittal or a new trial; subsequently, the court, *Gustafson, J.*, vacated the conviction as to one count of sexual assault in the fourth degree and rendered judgment of guilty of one count each of sexual assault in the fourth degree and risk of injury to a child, from which the defendant appealed to this court. *Affirmed.*

*Michael S. Taylor*, with whom was *Brendon P. Levesque*, for the appellant (defendant).

*Bharbara Viegas Rocha* and *Connor R. Reed*, certified legal interns, with whom were *Ronald G. Weller*, senior assistant state's attorney, and, on the brief, *Sharmese L. Walcott*, state's attorney, and *Michael W. Riley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Robert Lee Nichols, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the fourth degree in violation

of General Statutes (Rev. to 2009) § 53a-73a (a) (1) (A)[1] and risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] The defendant claims that (1) the trial court abused its discretion in denying his motion for a mistrial predicated on an outburst by the victim[3] while the defendant was testifying at trial and (2) there was insufficient evidence to support the conviction of sexual assault in the fourth degree. We disagree and, accordingly, affirm the judgment of conviction.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of the defendant's claims. The victim and his mother became acquainted with the defendant in 2007 while the victim attended an after-school program operated by the defendant. Additionally, the victim participated in a summer program also operated by the defendant. In the summer of 2010, the victim was exhibiting

---

[1] General Statutes (Rev. to 2009) § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under thirteen years of age and the actor is more than two years older than such other person  . . . ."

Hereinafter, all references to § 53a-73a are to the 2009 revision of the statute.

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts  . . . of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child  . . . shall be guilty of . . . a class B felony  . . . except that, if  . . . the victim of the offense is under thirteen years of age, such person shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

Section 53-21 was amended since the events underlying this appeal by No. 13-297, § 1, of the 2013 Public Acts and by No. 15-205, § 11, of the 2015 Public Acts, which made changes to the statute that are not relevant to this appeal. Accordingly, we refer to the current revision of the statute.

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

behavioral problems, including struggling to control his temper, getting into fights, and having arguments with his mother, who was raising the victim as a single mother. The victim's mother discussed the victim's issues with the defendant and his wife, Tamara Nichols (Tamara), both of whom offered to have the victim live with them for two weeks to help address his ongoing problems. The victim's mother agreed to the arrangement, and the victim proceeded to live with the defendant and Tamara in their home in Manchester for approximately ten days during the summer in 2010. At that time, the victim was eleven years old and the defendant was thirty-one years old.

When the victim first arrived at the defendant's home, the defendant permitted the victim to call his mother only three times per day. Nevertheless, during the first night, the victim, feeling scared and homesick, called his mother in violation of the defendant's rule. The following day, the victim's mother mentioned to the defendant that the victim had called her the previous night. Thereafter, the defendant prohibited the victim from calling home at all.

The victim engaged in various activities during the daytime while staying at the defendant's home. On his second day at the defendant's home, the victim performed landscaping work outside. Afterward, the victim went inside and showered. When the victim exited the shower, he discovered that the defendant was in the bathroom with him. The defendant then repeatedly beat the victim's buttocks with his hands. After the victim had dressed himself, the defendant led the victim to the defendant's bedroom and made the victim sleep in bed with both the defendant and Tamara. The victim had slept in a guest room the previous night.[4]

---

[4] The guest room was occupied by another young male when the victim arrived at the defendant's home. The victim had not been the first child, unrelated to the defendant, to stay over at the defendant's home.

On the victim's third day at the defendant's home, the victim again (1) was beaten by the defendant in the bathroom following a shower and (2) slept in bed with the defendant and Tamara in the defendant's bedroom. During the third evening, while in bed with the victim and Tamara, the defendant unbuttoned the victim's pants and rubbed the victim's legs, rubbed the side of the victim's buttocks, and repeatedly touched the victim's penis. These events reoccurred every night thereafter during the victim's stay at the defendant's home, except for Sundays. At one point, Tamara expressed her discomfort with the defendant's conduct; however, the defendant told her to "shut up," that "this is his house," and that "[h]e does what he wants."

Prior to the end of his stay at the defendant's home, the victim conveyed to the defendant that he intended to report the defendant's actions. The defendant responded by indicating that he knew the victim's mother and would find her if anything happened. This statement made the victim feel threatened and concerned that the defendant was going to harm his mother. After the victim had returned to his home following his stay with the defendant, the victim's grandmother noticed injuries on his body. When the victim's grandmother inquired about the injuries, the victim, feeling worried about his mother, told his grandmother that he had injured himself by falling.

In 2019, Detective Claire Hearn received a complaint from the victim, which prompted her to commence an investigation with regard to the events that had occurred in the summer of 2010. After taking a statement from the victim, Hearn prepared an arrest warrant for the defendant. The defendant subsequently was arrested, and in its operative amended long form information (operative information), the state charged the defendant with two counts of sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A) and

one count of risk of injury to a child in violation of § 53-21 (a) (2).

The matter was tried to a jury on September 26, 2022. During its case-in-chief, the state called as witnesses (1) the victim, (2) the victim's mother,[5] and (3) Hearn.[6] During the defendant's case-in-chief, the defense called as witnesses (1) the defendant and (2) Tamara. The trial court, *Gustafson, J.*, admitted two exhibits in full, namely, a photograph submitted by the state and a video recording submitted by the defendant. During trial, defense counsel orally moved for a mistrial on the basis of an outburst by the victim that had occurred during the defendant's direct examination. Following argument, the court denied that motion. The next day, the jury found the defendant guilty on all counts. On October 17, 2022, the defendant filed a postverdict motion seeking (1) a judgment of acquittal on the two sexual assault counts for lack of sufficient evidence or, in the alternative, (2) a new trial on the ground that the court had deprived him of a fair trial in denying his motion for a mistrial. On November 22, 2022, the court denied that motion.[7]

On November 29, 2022, after vacating the conviction of sexual assault in the fourth degree as alleged in count two of the operative information,[8] the court sentenced

---

[5] The state briefly recalled the victim's mother on rebuttal.

[6] After the state rested its case-in-chief, defense counsel orally moved for a judgment of acquittal on the ground that the state had failed to prove intent as to any of the crimes charged. The court denied that motion.

[7] In the postverdict motion, the defendant also requested a new trial on the basis of the court's alleged improper denial of a motion in limine that he had filed seeking to preclude certain evidence. The court denied the postverdict motion as to that ground as well. The defendant does not raise that issue on appeal, and, therefore, we need not discuss it further.

[8] Count one of the operative information alleged that the defendant committed sexual assault in the fourth degree by intentionally subjecting the victim to sexual contact, by touching the victim's genitalia for the sexual gratification of the defendant, when the victim was eleven years old and the defendant was more than two years older than the victim. Count two of the operative information alleged that the defendant committed sexual

the defendant to a total effective sentence of twenty years of incarceration, execution suspended after eight years, five years of which was a mandatory minimum, followed by ten years of probation. This appeal followed. Additional procedural history will be set forth as necessary.

I

The defendant first claims that the trial court abused its discretion in denying his motion for a mistrial stemming from an outburst by the victim while the defendant was testifying at trial. We disagree.

The following additional procedural history is relevant to our resolution of this claim. On direct examination, the defendant testified that, while the victim was at his home during the period in question, the victim experienced an issue with showering. In particular, the defendant testified: "The issue with showering was, ah, prior to [the victim] coming to arrive at my home that weekend, I was asked by [his] mom if it was possible for me to help show [the victim] how to take a shower because, up to that point, [the victim] had refused and had never done it. And [the victim's mother] just wanted

assault in the fourth degree by intentionally subjecting the victim to sexual contact, by touching the victim's genitalia to humiliate and to degrade the victim, when the victim was eleven years old and the defendant was more than two years older than the victim. Prior to the defendant's sentencing, the court stated that it would vacate the conviction on one of those counts because "the conduct involved one victim and one course of conduct . . . ." See *State* v. *Polanco*, 308 Conn. 242, 245, 61 A.3d 1084 (2013) (proper remedy for violation of double jeopardy arising from convictions of greater and lesser included offenses is vacatur of conviction of lesser included offense); *State* v. *Miranda*, 317 Conn. 741, 749, 120 A.3d 490 (2015) ("in *Polanco*, [our Supreme Court] invoked [its] supervisory powers to readopt vacatur as a remedy for a cumulative conviction that violated double jeopardy protections"); see also *State* v. *Wright*, 320 Conn. 781, 829–30, 135 A.3d 1 (2016) (proper remedy for violation of double jeopardy arising from convictions of three conspiracy counts based upon single conspiratorial agreement was vacatur of two of conspiracy convictions).

to know if it was possible, could I help him. So, I told her okay. Ah, you know, I'll try and we'll see."[9]

Immediately following that testimony, the trial transcript reflects that (1) there was "some banging in the courtroom," (2) the victim stated, "[t]his is bullshit,"[10] (3) the marshal in the courtroom conferred with the victim, and (4) counsel approached the bench for an off-the-record conversation. Following the off-the-record conversation, the court issued the following instruction to the jury: "So, ladies and gentlemen of the jury, outbursts in court are not to be considered as evidence and be disregarded by you. Thank you." Defense counsel then continued with the defendant's examination.

Later in the afternoon, following a lunch recess, defense counsel orally moved for a mistrial on the basis of the victim's outburst during the defendant's testimony.[11] Defense counsel argued that (1) the victim and his mother were observed loudly speaking within the hearing of the jury, (2) at least two jurors were watching and listening to the victim and his mother, rather than watching the defendant testify, and (3) the victim left the courtroom while yelling an expletive. Defense counsel maintained that, as a result of the victim's conduct, the defendant's right to a fair trial had been irreparably harmed. The state responded that the court's curative instruction to the jury immediately after the victim's outburst had cured any harm suffered by the defendant. Following argument, the court orally denied the motion for a mistrial. The court stated that, (1) during the

---

[9] The victim's mother later testified that she did not request that the defendant teach the victim how to shower.

[10] The victim was not under a sequestration order.

[11] In denying the defendant's postverdict motion seeking, inter alia, a new trial, the court stated that, during the off-the-record conversation, defense counsel had requested that the jury be excused in order to allow counsel to move for a mistrial, and the court explained that it would permit counsel to move for a mistrial outside of the jury's presence at the next recess.

defendant's testimony, the court observed the victim abruptly leave the courtroom while looking "demonstrably upset," although the court could not hear what the victim had said and did not hear anything else, (2) the court, while paying "pretty careful attention," did not observe the jury exchange looks with either the victim or his mother during any testimony, and (3) the court "anticipate[d] [that] it won't happen again," as the state had spoken to the victim and his mother[12] and, as the court iterated, "the decorum that we need in the courtroom is nothing but professionalism." The court further stated that it had instructed the jury to disregard the victim's outburst. In sum, the court determined that it "[did not] think [the defendant's right to] a fair trial [had been] irreparably harmed by the very limited, two second outburst that [the court] did provide a curative instruction on."

In his postverdict motion seeking, inter alia, a new trial, the defendant contended that the court improperly had denied his motion for a mistrial because the victim's outburst had "resulted in substantial and irreparable prejudice to the defendant's case. Despite the court's curative instruction, in the context of the proceedings as a whole, including the very short length of the trial and the contest of veracity between the defendant's testimony and the [victim's] testimony, the conduct was such that the jury reasonably could not be presumed to have disregarded it." In denying the postverdict motion as to that ground, the court stated that, (1) during the defendant's testimony at issue, the victim became "demonstrably upset," "exclaimed 'bullshit' as he walked approximately thirty feet to the exit [of the

[12] While setting forth its reasoning for denying the defendant's motion for a mistrial, the court noted for the record that the victim and his mother had returned to the courtroom.

courtroom]," and "angrily left the courtroom," (2) notwithstanding the defendant's contention "that [the victim] and his mother were near the jury and were animatedly reacting to the defendant's testimony, the court did not observe any other distracting or inappropriate conduct prior to or after the subject outburst," (3) following a sidebar with counsel, the court issued a curative instruction to the jury, (4) there were no additional disturbances, and (5) neither party requested any additional instructions to the jury, and no additional instructions were given. The court further stated that, notwithstanding the victim's "patently improper" outburst, the court immediately instructed the jury to disregard the outburst, which instruction the jury was presumed to follow. Accordingly, the court rejected the defendant's claim.

The defendant claims on appeal that the court abused its discretion in denying his motion for a mistrial, maintaining that (1) the victim's outburst during the defendant's testimony "resulted in substantial and irreparable prejudice" and (2) notwithstanding the court's issuance of a curative instruction to the jury following the outburst, in light of the circumstances, including the short length of the trial and the credibility contest between the victim and the defendant at trial, the jury reasonably could not be presumed to have disregarded the outburst. We are not persuaded.

The following legal principles and standard of review govern our review of the defendant's claim. Practice Book § 42-43 provides in relevant part: "Upon motion of a defendant, the judicial authority may declare a mistrial at any time during the trial if there occurs during the trial an error or legal defect in the proceedings, or any conduct inside or outside the courtroom which results in substantial and irreparable prejudice to the defendant's case. . . ." The defendant bears the burden

to establish prejudice.[13] See *State* v. *Gore*, 342 Conn. 129, 168–69, 269 A.3d 1 (2022). "We review a trial court's ruling on a motion for a mistrial under the abuse of discretion standard. . . . When reviewing a ruling on a mistrial motion, we must ask whether the trial court considered the totality of the circumstances in arriving at its decision. . . . Further, our review must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided." (Citations omitted; internal quotation marks omitted.) *State* v. *Henderson*, 348 Conn. 648, 666–67, 309 A.3d 1208 (2024). "Every reasonable presumption will be given in favor of the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Anderson*, 163 Conn. App. 783, 791, 134 A.3d 741, cert. denied, 321 Conn. 909, 138 A.3d 931 (2016).

"Furthermore, [w]hile the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot

---

[13] In his principal appellate brief, citing *Remmer* v. *United States*, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654 (1954), the defendant asserted that a rebuttable presumption of prejudice (*Remmer* presumption) arose from the victim's outburst during the defendant's testimony. See id., 229 ("In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the [g]overnment to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant."). The defendant further maintained that the trial court improperly failed to analyze his claim under *Remmer*. In response, the state argued that the *Remmer* presumption was inapplicable to this action because the victim's outburst was not a "private" communication with a juror. During oral argument before this court, the defendant's appellate counsel expressly withdrew the contention that the *Remmer* presumption applied in the present action. Accordingly, we need not address the applicability of the *Remmer* presumption further.

have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances [that] may arise during the trial in which his [or her] function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice." (Internal quotation marks omitted.) *State* v. *Collins*, 206 Conn. App. 438, 441–42, 260 A.3d 507, cert. denied, 339 Conn. 914, 262 A.3d 135 (2021).

In resolving the defendant's claim, we are guided by our Supreme Court's decision in *State* v. *Savage*, 161 Conn. 445, 290 A.2d 221 (1971). In *Savage*, the defendant, who was charged with incest, testified at trial. Id., 446, 447–48. As the defendant was leaving the witness stand following his testimony, the complainant, who was the defendant's daughter, "screamed that he was a liar and had not told the truth." Id., 448–49. The trial court excused the jury, which had been present for the complainant's outburst, and the defendant moved for a mistrial, which the court denied. Id., 449. After recalling the jury, the court "instructed [the jury] at length to disregard the complainant's outburst. The court again so instructed the jury during its final charge." Id. On appeal, our Supreme Court upheld the trial court's denial of the defendant's motion for a mistrial, concluding that "[t]he [trial] court's careful and correct instructions to the jury to disregard the complainant's outburst obviated any possible harm to the defendant from this outburst . . . ." Id.

In light of *Savage*, as well as the totality of the circumstances in the present case, we conclude that the court properly denied the defendant's motion for a mistrial.

As the court found, although the victim's outburst in the courtroom was inappropriate, the outburst was brief and isolated, and the court did not observe any improper interaction between the jury and the victim or his mother.[14] Moreover, immediately following the sidebar with counsel that had occurred after the victim's outburst, the court issued a curative instruction to the jury directing it to disregard the outburst, as it did not constitute evidence.[15] "[A]s a general matter, the jury is presumed to follow the court's curative instructions in the absence of some indication to the contrary." (Internal quotation marks omitted.) *State* v. *Roberto Q.*, 170 Conn. App. 733, 746, 155 A.3d 756, cert. denied, 325 Conn. 910, 158 A.3d 320 (2017). The defendant has not demonstrated any indication that the jury failed to abide by the court's curative instruction, which "obviated any possible harm" to the defendant from the victim's outburst. *State* v. *Savage*, supra, 161 Conn. 449.

In sum, we conclude that the court did not abuse its discretion in denying the defendant's motion for a mistrial.

## II

The defendant next claims that there was insufficient evidence to support his conviction of sexual assault in

---

[14] The defendant maintains that, contrary to the court's findings, (1) the victim exclaimed, "[t]his is *fucking* bullshit"; (emphasis added); rather than "[t]his is bullshit," and (2) at least two jurors were paying attention to the victim and his mother, rather than to the defendant, during the defendant's testimony. The defendant offers no support for these contentions other than counsel's representations, which are inadequate. See *Magana* v. *Wells Fargo Bank, N.A.*, 164 Conn. App. 729, 734, 138 A.3d 966 (2016) ("representations of counsel are not evidence and are certainly not proof" (internal quotation marks omitted)).

[15] The court did not repeat its curative instruction in its final charge to the jury the next day. With respect to the evidence in the case, however, the court instructed the jury that "[t]he evidence from which you are to decide the facts consist[s] of one, the sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness; and two, the exhibits that have been admitted into evidence." The court further

the fourth degree in violation of § 53a-73a (a) (1) (A) as alleged in count one of the operative information (count one).[16] We do not agree.

General Statutes (Rev. to 2009) § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under thirteen years of age and the actor is more than two years older than such other person . . . ." " 'Sexual contact' " is statutorily defined as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person." General Statutes (Rev. to 2009) § 53a-65 (3). " 'Intimate parts' " is statutory defined as "the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts." General Statutes (Rev. to 2009) § 53a-65 (8).

The following additional procedural history is relevant to our resolution of this claim. In support of count

instructed the jury that "[y]ou may not go outside the evidence introduced in court to find the facts."

[16] Notwithstanding the court's vacatur of the defendant's conviction of sexual assault in the fourth degree as alleged in count two of the operative information; see footnote 8 of this opinion; the parties have addressed the sufficiency of the evidence as to both counts one and two, which is appropriate given the possibility that we may reverse the defendant's conviction with respect to count one and order the reinstatement of his conviction as to count two. See *State* v. *Polanco*, 308 Conn. 242, 262–63, 61 A.3d 1084 (2013) (reinstatement of conviction vacated as violative of double jeopardy is proper remedy when cumulative conviction is reversed on appeal for reasons unrelated to viability of vacated conviction). Because we affirm the defendant's conviction with regard to count one, we need not address the merits of the defendant's claim that the evidence was insufficient to support his conviction as to count two.

one, the state alleged that "during the summer of 2010 in Manchester . . . the defendant intentionally subjected [the victim] to sexual contact, who was eleven years of age and the defendant is more than two years older than [the victim]. This sexual contact was the touching of [the victim's] genitalia by the defendant for the sexual gratification of the defendant."

In his postverdict motion seeking, inter alia, a judgment of acquittal as to his conviction on count one, the defendant asserted that "the evidence [was] not sufficient to demonstrate . . . that [he] had the specific intent to obtain sexual gratification from the sexual contact . . . at the time of the alleged offense . . . ." (Emphasis omitted.) In denying the motion as to that ground, the court determined that the trial evidence, along with all inferences reasonably drawn therefrom, when viewed in the light most favorable to sustaining the verdict, established that the defendant had touched the victim's genital area for the purpose of his sexual gratification, as the defendant's conduct (1) occurred at night in the defendant's bed and (2) included rubbing the victim's penis and buttocks.

On appeal, the defendant concedes that, on the basis of the evidence, the jury reasonably could have found, inter alia, that, (1) at the time of the events in question, the victim was under the age of thirteen years old and the defendant was more than two years older than the victim, and (2) the defendant intentionally touched the victim in a sexual manner in that the defendant, while in bed in the defendant's bedroom with the victim and Tamara, at night, repeatedly touched the victim's penis, which conduct was also accompanied by the defendant rubbing the victim's legs and the side of the victim's buttocks. The defendant asserts, however, that there was insufficient evidence demonstrating that he acted with the specific intent required pursuant to § 53a-73a (a) (1) (A) because the evidence was not adequate to

establish that he intentionally touched the victim for the purpose of his sexual gratification. We disagree.

"We begin our analysis by setting forth the relevant legal principles and standard of review. The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We also note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Additionally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of

the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Thomas S.*, 222 Conn. App. 201, 211–12, 304 A.3d 513 (2023), cert. denied, 348 Conn. 943, 307 A.3d 909 (2024).

"The specific intent to subject a person under thirteen years of age to sexual contact, when the actor is more than two years older than the victim, is an essential element of the crime of sexual assault in the fourth degree [in violation of § 53a-73a (a) (1) (A)]." *State* v. *Andersen*, 132 Conn. App. 125, 143–44, 31 A.3d 385 (2011), cert. denied, 305 Conn. 906, 44 A.3d 182 (2012). "It is well established that the question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence . . . . Intent may be and usually is inferred from [conduct. . . . Whether] such an inference should be drawn is properly a question for the jury to decide. . . . [I]ntent may be inferred from the events leading up to, and immediately following, the conduct in question . . . the accused's physical acts and the general surrounding circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Thompson*, 146 Conn. App. 249, 277–78, 76 A.3d 273, cert. denied, 310 Conn. 956, 81 A.3d 1182 (2013); see also *State* v. *Roy D. L.*, 339 Conn. 820, 852, 262 A.3d 712 (2021) ("It is well established that [i]ntent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned

from circumstantial evidence such as . . . the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.)).

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence to support a reasonable inference that the defendant intentionally touched the victim's genitalia for the purpose of his sexual gratification. The victim's testimony[17] established that, starting on the third evening of the victim's approximate ten day stay at the defendant's home and reoccurring every night thereafter, except for Sundays, the defendant (1) forced the victim into an intimate location, that is, the defendant's bed in his bedroom, at nighttime, accompanied by Tamara, and (2) unbuttoned the victim's pants and repeatedly touched the victim's penis and rubbed the victim's legs and the side of the victim's buttocks. These circumstances easily justify a reasonable inference that the defendant did not touch the victim's penis for some reason other than to obtain sexual gratification.

In addition, the victim testified that when (1) he informed the defendant that he intended to report the defendant's conduct, the defendant made statements regarding his mother that caused him to fear that the defendant would harm his mother, and (2) Tamara expressed discomfort with the defendant's actions, the defendant told her to "shut up," that "this is his house,"

_____

[17] Other than the victim's testimony, there was no evidence describing the contours of the defendant's abuse. The testimony of the defendant, as well as Tamara, contradicted the victim's account and denied any abuse of the victim by the defendant. As this court has explained, however, "a jury reasonably can find a defendant guilty of sexual assault on the basis of the victim's testimony alone." *State* v. *Gene C.*, 140 Conn. App. 241, 247, 57 A.3d 885, cert. denied, 308 Conn. 928, 64 A.3d 120 (2013).

and that "[h]e does what he wants." This evidence further supports a reasonable inference that the defendant's intentional touching of the victim was for the purpose of the defendant's sexual gratification.[18] Otherwise, if the conduct had been for some nonsexual purpose, there would have been little need for (1) the defendant to threaten the victim with harm toward his mother, (2) Tamara to express discomfort with the defendant's conduct, and (3) the defendant to rebuke Tamara for sharing her concerns.

Finally, the reasonableness of these inferences is further bolstered by the recurrent nature of the defendant's conduct. See *State* v. *Roy D. L.*, supra, 339 Conn. 854 (agreeing with trial court's statement that " 'repeated and almost ritualistic nature' " of defendant's conduct made inference of sexual gratification " 'particularly reasonable' ").

In sum, we reject the defendant's claim that there was insufficient evidence to sustain his conviction of sexual assault in the fourth degree as alleged in count one.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[18] The defendant posits that "there must be some circumstances beyond the doing of the act itself that would warrant [intent being inferred from behavior] by the jury" and that, although "the jury reasonably could have found intentional sexual touching . . . the jury should not be allowed to infer, from that conduct alone, that the touching in question was for any particular purpose." (Emphasis omitted.) As we explain in this opinion, it is not the defendant's singular act of intentionally touching the victim's genitalia from which the jury reasonably could infer that the defendant acted for the purpose of his sexual gratification; instead, this inference stems from the defendant's conduct examined in conjunction with the circumstances surrounding the conduct. Indeed, there are conceivable scenarios involving the intentional touching of a child's intimate areas, such as a parent washing their child for hygienic purposes or a doctor performing a medical examination of a child, where a reasonable inference of sexual gratification would not arise.